# United States Court of Appeals for the Federal Circuit

2006-1502

NIPPON STEEL CORPORATION,

Plaintiff-Appellee,

and

JFE STEEL CORPORATION (formerly Kawasaki Steel Corporation),

Plaintiff-Appellee,

and

THYSSENKRUP ACCIAI SPECIALI TERNI S.P.A.,

Plaintiff,

and

ACCIAI SPECIALI TERNI USA, INC.,

Plaintiff,

v.

UNITED STATES INTERNATIONAL TRADE COMMISSION,

Defendant-Appellee,

v.

ALLEGHENY LUDLUM CORPORATION and AK STEEL CORPORATION,

Defendants-Appellants,

and

BUTLER ARMCO INDEPENDENT UNION, ZANESVILLE ARMCO INDEPENDENT UNION,
UNITED STEEL WORKERS OF AMERICA, and AFL-CIO/CLC,

Defendants.

Gregory C. Gerdes, Gibson, Dunn & Crutcher LLP, of Washington, DC, argued for plaintiffs-appellees. With him on the brief for Nippon Steel Corporation were Daniel J. Plaine and Gracia M. Berg. Of counsel was John Christopher Woods. On the brief for JFE Steel Corporation (formerly Kawasaki Steel Corporation) were Robert H. Huey and Steven F. Hill, Hunton & Williams LLP, of Washingon, DC. Of counsel was Christina C. Benson.

Gracemary R. Roth-Roffy, Attorney, Office of the General Counsel, United States International Trade Commission, of Washington, DC, argued for defendant-appellee. With her on the brief were James M. Lyons, General Counsel, and Neal J. Reynolds, Assistant General Counsel.

Kathleen W. Cannon, Kelley Drye Collier Shannon, of Washington, DC, argued for defendants-appellants.  With her on the brief were David A. Hartquist and R. Alan Luberda.

Appealed from:  United States Court of International Trade

Judge Richard K. Eaton

# United States Court of Appeals for the Federal Circuit

2006-1502

NIPPON STEEL CORPORATION,

Plaintiff-Appellee,

and

JFE STEEL CORPORATION (formerly Kawasaki Steel Corporation),

Plaintiff-Appellee,

and

THYSSENKRUP ACCIAI SPECIALI TERNI S.P.A.,

Plaintiff,

and

ACCIAI SPECIALI TERNI USA, INC.,

Plaintiff,

v.

UNITED STATES INTERNATIONAL TRADE COMMISSION,

Defendant-Appellee,

v.

ALLEGHENY LUDLUM CORPORATION and AK STEEL CORPORATION,

Defendants-Appellants,

and

BUTLER ARMCO INDEPENDENT UNION, ZANESVILLE ARMCO INDEPENDENT UNION, UNITED STATES STEEL WORKERS OF AMERICA, and AFL-CIO/CLC,

Defendants.

_____

DECIDED: July 25, 2007

_____

Before NEWMAN, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and MOORE, Circuit Judge.

MOORE, Circuit Judge.

Appellants Allegheny Ludlum Corporation and AK Steel Corporation appeal an interim remand order from the United States Court of International Trade instructing the United States International Trade Commission (Commission) either to re-open the record in this "sunset review" or enter a negative material injury determination. Nippon Steel Corp. v. United States, 391 F. Supp. 2d 1258 (Ct. Int'l Trade 2005) (Nippon V). Appellants contend that the Commission's determination in Grain-Oriented Electrical Steel from Italy and Japan, USITC Pub. 3680, Inv. Nos. 701-TA-355, 731-TA-659-660 (Mar. 2004) (Second Remand Determination) was supported by substantial evidence and that the Court of International Trade erred in its remand order in Nippon V. We agree with Appellants. Therefore, we reverse the Court of International Trade's holding in Nippon V, vacate the Commission's subsequent decision on remand, Grain-Oriented Electrical Steel from Italy and Japan, USITC Pub. 3798, Inv. Nos. 701-TA-355, 731-TA-659-660 (Sept. 2005) (Third Remand Determination), and the Court of International Trade's decision in Nippon Steel Corp. v. United States, 433 F. Supp. 2d 1336 (Ct. Int'l Trade 2006) (Nippon VI), and order the Court of International Trade to reinstate the Commission's affirmative material injury determination reached in the Second Remand Determination.

**BACKGROUND**

The complex procedural history of this sunset review[1] spans more than six years and includes four determinations by the Commission and six opinions from the Court of International Trade.[2] The relevant history begins in late 1999, when the Commission issued a notice that it was instituting a sunset review of the antidumping and countervailing duty orders involving grain-oriented silicon electrical steel ("GOES") imported from Italy and Japan. See Grain-Oriented Electrical Steel From Italy and Japan, 64 Fed. Reg. 67,318 (U.S. Int'l Trade Comm'n Dec. 1, 1999) (institution of sunset reviews).

In 2001, the Commission affirmatively determined, by a three-to-three[3] vote of the Commissioners, that revocation of the antidumping and countervailing duty orders covering GOES from Italy and Japan was likely to cause material injury to an industry in the United States. Grain-Oriented Electrical Steel from Italy and Japan, USITC Pub. 3396, Inv. Nos. 701-TA-355, 731-TA-659-660 (Feb. 2001) (Initial Determination). The subject importers appealed that decision to the Court of International Trade. The court remanded back to the Commission, directing the Commission to discuss the four

---

[1]      A sunset review is initiated five years after the Commission issues an antidumping or countervailing duty order. 19 U.S.C. § 1675(c). In conducting a sunset review, the United States Department of Commerce must assess whether the dumping or countervailing subsidy would be likely to recur if the order was revoked, and the Commission must assess whether revocation "would be likely to lead to continuation or recurrence of . . . material injury" to a domestic industry. Id.

[2]      The first two Court of International Trade decisions in this case involve issues not relevant to the present appeal, and therefore, are not discussed herein. See Nippon Steel Corp. v. United States, 25 C.I.T. 1408 (2001); Nippon Steel Corp. v. United States, 239 F. Supp. 2d 1367 (Ct. Int'l Trade 2002).

[3]      An evenly-divided vote of the Commissioners is treated as an affirmative vote. 19 U.S.C. § 1677(11).

volume factors set forth in the statute, 19 U.S.C. § 1675a(a)(2)(A)-(D), and to further explain whether the subject imports were likely to be significant in absolute terms or relative to U.S. production and consumption. Nippon Steel Corp. v. United States, 26 C.I.T. 1416 (2002) (Nippon III).

In the first remand, the Commission reaffirmed its original affirmative determination again by a tie vote and addressed each of the statutory sunset review factors in detail. Grain-Oriented Electrical Steel from Italy and Japan, USITC Pub. 3585, Inv. Nos. 701-TA-355, 731-TA-659-660 (Mar. 2003) (First Remand Determination). The subject importers again appealed to the Court of International Trade. On appeal, the court remanded for the Commission to further explain its decision to cumulate the imports from Italy and Japan,[4] for further discussion of the relevant impact on domestic volume and price, and to address the evidence that did not support an affirmative finding. Nippon Steel Corp. v. United States, 301 F. Supp. 2d 1355 (Ct. Int'l Trade 2003) (Nippon IV).

In its second remand determination, the Commission again voted three-to-three that revocation of the orders would lead to a recurrence of material injury, providing even further detail on its affirmative findings. Second Remand Determination. The subject importers appealed again. On appeal, the Court of International Trade affirmed the Commission's decision to cumulate the subject imports, but the court held that the Commission's findings regarding the likely volume effect and impact were not supported

---

 [4] In a sunset review, before making its "likelihood of continuation or recurrence of material injury" determination, the Commission may, in its discretion, cumulatively assess the volume and effect of imports of subject merchandise from different countries "if such imports would be likely to compete with each other and with domestic like products in the United States market." 19 U.S.C. § 1675(a)(7).

by substantial evidence. Nippon V, 391 F. Supp. 2d at 1283-84. The court directed that "[o]n remand, the [Commission] may either reopen the record and reexamine its findings with respect to both countries' likely volume as it relates to injury, or find that the likely volume on revocation of the orders would likely not be significant and complete its analysis accordingly." Id. at 1284.

The Commission thereafter re-opened the record and requested additional information from involved parties regarding the likely volume effects and impact of the Italian and Japanese GOES imports if the orders were revoked. After re-opening the record but before the voting, Commissioner Miller left the Commission. Neither the departing Commissioner nor her replacement took part in the subsequent September 15, 2005 vote. This time, the Commission had a negative determination, voting three-to-two that a revocation of the orders was not likely to cause material injury to the domestic industry. Third Remand Determination, slip. op. at 1. None of the Commissioners voted differently in the Second Remand Determination and Third Remand Determination; however, the loss of Commissioner Miller's affirmative vote made the outcome in the Third Remand Determination negative.

The domestic producers appealed the Commission's negative determination to the Court of International Trade. The court affirmed the Commission's negative determination in Nippon VI, finding that the negative determination was supported by substantial evidence. 433 F. Supp. 2d at 1350. The domestic producers now appeal to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

**DISCUSSION**

I.

A.

The primary issue presented in this appeal is whether this court should review the Court of International Trade's decision to remand in Nippon V. Each of the three parties to this appeal has a different position on this issue. Appellants (the domestic producers) contend that we should review Nippon V and conclude that the remand order in that decision was improper because the Commission's decision in the Second Remand Determination was supported by substantial evidence. Appellees (the subject importers) argue that even if we were to review the remand order in Nippon V, we must affirm because the Commission's Second Remand Determination was not supported by substantial evidence. Appellees further contend that we should affirm the Court of International Trade's decision in Nippon VI because appellants have not disputed the propriety of that decision. The government, in contrast, argues that although the decision to remand in Nippon V was improper, that decision and the Second Remand Determination do not survive for our review because the Commission's subsequent decision in the Third Remand Determination constitutes the Commission's final position.

We reject the government's position because it does not provide for meaningful review of interim decisions from the Court of International Trade. That position directly conflicts with our precedent. See Nippon Steel Corp. v. United States, 458 F.3d 1345, 1347-48 (Fed. Cir. 2006) (Nippon (Tin Mill)); Altx, Inc. v. United States, 370 F.3d 1108, 1117 (Fed. Cir. 2004); Taiwan Semiconductors Indus. Assoc. v. Micron Tech., Inc., 266 F.3d 1339, 1344 (Fed. Cir. 2001). In each of these cases, this court reviewed an interim

decision by the Court of International Trade that either reversed findings or remanded back to the Commission for further clarification or fact finding.  See Nippon (Tin Mill), 458 F.3d at 1347-48 (agreeing with the appellants that the Court of International Trade's interim remand order that reversed the Commission was in error); Altx, 370 F.3d at 1117 (stating "our jurisdiction attaches as the result of a final Court of International Trade decision . . . but nonetheless encompasses the entirety of the proceedings before the court, including intermediate remand orders that would not, independently, be appealable"); Taiwan Semiconductors Indus., 266 F.3d at 1344.

The government also argues that our decision in Tung Mung Development Co. v. United States, 354 F.3d 1371 (Fed. Cir. 2004), requires us to ignore any perceived error in the Court of International Trade's decision in Nippon V because the Commission's actions in the Third Remand Determination constitute a final, independent agency action.  In Tung Mung, the appellant steel company challenged an interim Court of International Trade decision as improper because it failed to give deference to Commerce's decision to use a certain method when calculating the appropriate antidumping duty.  Id. at 1378.  After the trade court's allegedly improper remand, Commerce reevaluated the calculation methods, and independently concluded that a different method was more appropriate, which constituted a departure from standard policy that it thoroughly explained.  Id. at 1376-77.  The Court of International Trade affirmed Commerce's antidumping duty calculation using the new method.  Id. at 1378.  On appeal, this court did not review the alleged errors in the Court of International Trade's remand order, stating that "any error in the remand orders is irrelevant because Commerce's redetermination decisions represent new, independent agency

interpretations." Id. at 1379. Thus, the Court of International Trade's prior errors, if any, "did not survive Commerce's decisions on remand to adopt a new policy." Id. at 1378-79.

Unlike Tung Mung, the present case does not involve an independent change in agency policy, but rather, the change in the Commission's vote between the Second Remand Determination and the Third Remand Determination was solely a product of the departure of Commissioner Miller, who had in each previous determination in this case voted affirmatively. None of the other voting Commissioners changed their vote between the Second Remand Determination and the Third Remand Determination. The Commission conceded in its briefing to this court that the change in outcome between the Second Remand Determination and the Third Remand Determination was not a policy change but was solely the result of the departure of one Commissioner. The Commission stated:

> The change in the Commission's decision on third remand was not due to the contents of the Courts decision or any aspect of the Court's order. In fact, on remand, no individual Commissioner changed his or her vote. Instead, the change in outcome resulted from the departure of Commissioner Marsha Miller . . . . None of the sitting Commissioners who participated in the third remand changed their votes on the ultimate outcome as part of the third remand process. Instead, the change in outcome was simply the result of the fact that Commissioner Miller, a member of the original Commission majority, left the Commission before its third remand determination was finalized.

Brief of Defendant-Appellee United States International Trade Commission at 7, 31, Nippon Steel Corp. v. U.S. Int'l Trade Comm'n, No. 06-1502 (Fed. Cir. Nov. 16, 2006). In a similar situation, in Altx, this court found that a change in the identity of the voting Commissioners did not amount to an "independent policy change by the Commission" as contemplated in Tung Mung. Altx, 370 F.3d at 1119 n.8 (stating "[u]nder these

2006-1502                                     8

circumstances, the decision of the Court of International Trade . . . has, in the parlance of Tung Mung, 'survived' our review"). During oral argument in this case, the Commission acknowledged this similarity between the present case and Altx:

> Q: But why isn't this kind of like our decision in Altx . . . where they said that a change in the voting Commissioners did not amount to an independent policy change by the Commission and allowed [ ] a review of the intermediate decision—I think that it was the second one in that case—because it wasn't a change in the policy, it was just a change in the Commissioners?
> A: . . . Altx wasn't a policy change, and basically the Third Remand Determination here is not a policy change. However, the Commission should be able to have its ability to change its mind, so to speak, on remand, because it is, as this court has held, the ultimate—basically it determines material injury.
> Q: But nobody changed their mind, did they?
> A: No, your Honor.

Audio File of Oral Argument at 19:50-21:35, Nippon Steel Corp. v. U.S. Int'l Trade Comm'n, No. 06-1502 (Fed. Cir. Feb. 7, 2007).

We recognize that the posture of this case is somewhat different from Altx in that the Commission obtained further evidence on remand through supplemental questionnaires of interested parties. After reviewing this evidence, however, it is clear that it did not impact the outcome of the case. As in Altx, the new majority adopted all of its previous findings expressed in the dissent of the Second Remand Determination. Third Remand Determination, slip. op. at 5-9 (adopting their prior views "in their entirety regarding the likely volume of subject imports . . . likely price effects . . . [and] likely impact"). Moreover, the new evidence does not support a change in outcome in this case. See Dissenting Views of Chairman Stephen Koplan and Commissioner Charlotte R. Lane, Third Remand Determination, slip. op. at 15, 18-19 (citing new information regarding the world-wide significance of the Japanese GOES industry and newly

submitted business forecasts and related information from domestic GOES producers that "demonstrate the likely negative impact on the domestic industry if the orders at issue are revoked and cumulated subject imports of GOES from Italy and Japan reenter the United States market"). In the Third Remand Determination, the new majority references only two pieces of newly obtained information, but neither of these pieces could support a change in the outcome. First, the majority references business plans and an SEC filing submitted by domestic producers, but the majority does not suggest that this evidence supports its determination. See Third Remand Determination, slip. op. at 9. Rather, this evidence is actually cited by the dissenting Commissioners as supporting an affirmative determination, id. at 18, and the majority merely contends that this evidence is not "inconsistent with" its negative determination, id. at 9. The second piece of new evidence referenced by the majority relates to the increasing world-wide demand for electricity, which was "previously found" by all Commissioners to correlate to an increase in the demand for GOES. Id. at 6. In the Second Remand Determination, the Commission explicitly acknowledged that the demand for electricity was increasing but found that this would not affect the outcome. Slip. op. at 46, 57. Accordingly, this new evidence further demonstrating the increased demand for electricity would not have impacted the decision reached in the Second Remand Determination, and therefore, this new evidence does not support a change in agency policy by the Commission.

Moreover, the Third Remand Determination itself evidences that the Commission was not making a policy change by this time reaching a negative material injury determination. The Commission was not, in the Third Remand Determination,

implementing a new agency policy, such as using a new method of calculating a duty (as in Tung Mung) or a new statutory or regulatory interpretation, see SKF USA, Inc. v. United States, 254 F.3d 1022, 1030 (Fed. Cir. 2001). Rather, as admitted by the Commission throughout this appeal, the different result between the Second Remand Determination and the Third Remand Determination was, as in Altx, attributable solely to the change in the voting Commissioners. The new majority of voting Commissioners simply weighed the evidence differently than the old majority, but that does not amount to a change in Commission practice or policy.[5] Our precedent establishes that a change in the voting Commissioners alone, even if it results in a change to the outcome of the case, does not amount to an "independent policy change by the Commission." Altx, 370 F.3d at 1119 n.8.

Therefore, we reject appellee's request that we ignore any perceived errors in the Court of International Trade's Nippon V decision based on the notion that the Third Remand Determination constituted a new, independent agency action as contemplated in Tung Mung. We note that if we were to accept the appellee's requested approach to ignore the interim Commission and Court of International Trade decisions based on the

---

[5]        In reaching this conclusion, we are cognizant that the Supreme Court requires us to give deference to agency decisions that embody policy changes. See, e.g., Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 981 (2005) (citing Chevron U.S.A. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 863-64 (1984) for the proposition that "[a]n initial agency interpretation is not carved in stone. On the contrary, the agency . . . must consider varying interpretations and the wisdom of its policy on a continuing basis"). When an agency decides to change course, however, it must adequately explain the reason for a reversal of policy. See Warner-Lambert Co. v. United States, 425 F.3d 1381, 1385 (Fed. Cir. 2005) (citing Nat'l Cable, 545 U.S. at 863-64). In this case, the Third Remand Determination does not reflect a substantive difference in policy, and the opinion does not discuss any policy change, but rather, a simple disagreement of the weight to be accorded the evidence before it. This does not amount to an independent policy change contemplated by Tung Mung.

changed outcome of the final determination, this court could not ever review interim decisions where the Commission—or other agency—reached a different outcome after remand. That result would clearly conflict with our precedent. Accordingly, we review the propriety of the Court of International Trade's remand order in Nippon V.

B.

We next consider the standard with which to review the remand order. The appropriate standard depends on the posture of the case. For example, in Nippon (Tin Mill) the trade court's interim remand order dictated that the Commission enter a negative determination. 458 F.3d at 1348. This court stepped into the shoes of the Court of International Trade to review de novo the underlying Commission decision for substantial evidence. Id. In Altx, however, this court applied an abuse of discretion standard to review the Court of International Trade's interim remand order because the trade court had "simply requested further explanation of agency action, and did not evaluate the substantiality of the Commission's evidence." 370 F.3d at 1117 (internal quotations and citation omitted). We find the present case analogous to Nippon (Tin Mill). In this case, the Court of International Trade reviewed the Commission's Second Remand Determination for substantial evidence and found that it lacked the requisite support. Nippon V, 391 F. Supp. 2d at 1284. The Court of International Trade remanded to the Commission, giving it two options on how to proceed: "[1] reopen the record in order to obtain substantial evidence to support its adverse impact conclusion or [2] make a determination that subject imports will have no adverse impact should the orders be revoked." Id. These two options make the Nippon V remand order precisely the type that was differentiated from orders where the "abuse of discretion" standard is

appropriate for review in <u>Altx</u>. 370 F.3d at 1117 ("Here . . . neither of the Court of International Trade's remand decisions required additional investigation by the Commission, nor did either of the remand decisions alter a Commission determination in any substantive regard . . . . Therefore, any review of [the interim decisions] in this case is under an abuse of discretion standard.").

We therefore find it appropriate to review the Court of International Trade's decision in <u>Nippon V</u> <u>de novo</u>, to ascertain whether the Commission's determination in the <u>Second Remand Determination</u> was supported by substantial evidence. <u>See</u> <u>Nippon (Tin Mill)</u>, 458 F.3d at 1350-52.

II.

In reviewing determinations from the Commission, this court must affirm a determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Our responsibility is thus to determine whether Commerce's decision in the <u>Second Remand Determination</u> is supported by substantial evidence on the "record as a whole, including that which 'fairly detracts from its weight.'" <u>Nippon (Tin Mill)</u>, 458 F.3d at 1351 (citations omitted).

In the <u>Second Remand Determination</u>, the Commission found that revocation of the antidumping and countervailing duty orders covering GOES from Italy and Japan was likely to continue or cause material injury to the relevant domestic industry within a reasonably foreseeable time. In so doing, the Commission first determined that it was appropriate to cumulate the GOES imports from Italy and Japan, in accordance with 19 U.S.C. § 1675a(a)(7). <u>Second Remand Determination</u>, slip. op. at 5. The Commission

also considered the statutory factors prescribed at 19 U.S.C. § 1675a, concluding that revocation of the subject orders would have a materially adverse affect on the domestic industry. The appellants and the government both contend that these findings were supported by substantial evidence. We agree.

A.

During a sunset review, the Commission has discretion to "cumulatively assess the volume and effect of imports of the subject merchandise from all countries with respect to which reviews . . . were initiated on the same day, if such imports would be likely to compete with each other and with domestic like products in the United States market." 19 U.S.C. § 1675a(a)(7). The statute prohibits the Commission from cumulatively assessing "the volume and effects of imports of the subject merchandise in a case in which it determines that such imports are likely to have no discernible adverse impact[6] on the domestic industry." Id.

The Commission found that cumulatively assessing the subject imports was not prohibited because the imports were likely to have a discernible adverse impact on the domestic industry. This finding was supported by evidence of higher prices for GOES in the United States, which the Commission determined would attract any excess Italian and Japanese GOES production as well as cause potential redirection of the subject imports to the United States from other countries. Second Remand Determination, slip. op. at 9, 14.

---

[6] The "discernible adverse impact" presents a relatively low threshold. Neenah Foundry Co. v. United States, 155 F. Supp. 2d 766, 774 (Ct. Int'l Trade 2001). It is not the same as finding a negative adverse impact, however, which is part of the ultimate analysis of whether the domestic industry is likely to be materially injured.

In addition, the Commission found that "there is a reasonable overlap of likely competition among the subject imports and between subject imports and the domestic like product" because the evidence showed that there is likely to be direct competition for GOES between Italian and Japanese imports, that the like domestic product is substitutable for the subject imports, and that the two countries would share similar channels of distribution if the order was revoked.  Id. at 23-33.  The Commission also determined that "there are no significant differences in the conditions of competition between the subject countries." Id. at 34.  Even the Court of International Trade acknowledged that substantial evidence supported the Commission's decision to cumulate the Italian and Japanese GOES imports.  Nippon V, 391 F. Supp. 2d at 1270 (stating "the ITC has provided sufficient evidence to support its [cumulation] finding").

B.

When conducting a sunset review, the Commission is obligated to consider "the likely volume, price effect, and impact of imports of the subject merchandise on the industry if the order is revoked."  19 U.S.C. § 1675a(a)(1).  The Commission is further required to take into account: (1) any prior injury determination, including the volume, price and impact of imports on the domestic industry before the subject order was imposed, (2) whether any improvement in the industry is related to the order, and (3) whether the industry is vulnerable to injury if the order is revoked.  Id. § 1675a(a)(1)(A)-(C).

With respect to the likely volume impact, the Commission found that the impact "would be significant in terms of U.S. production and U.S. apparent consumption if the countervailing and antidumping duty orders were revoked."  Second Remand

Determination, slip. op. at 47. The Commission cited an abundance of evidence to support this conclusion, including (1) that both Italy and Japan have export-heavy GOES industries with some appreciable unused capacity; (2) that the United States, which is the largest GOES market in the world, has an increasing GOES demand with prevalent short-term needs; and (3) that the incentive to import to the United States is strong, even given the increasing world-wide demand for GOES. Id. at 35-47.

With respect to the likely price effects, the Commission concluded that "if the orders were revoked, significant volumes of subject imports likely would significantly undersell the domestic like product to gain market share and likely would have significant depressing or suppressing effects on the prices of the domestic like product within a reasonably foreseeable time." Id. at 53. The evidence showed that prior to issuance of the orders, "significant underselling" (i.e., import price far less than domestic price) of the subject imports occurred in the United States; and that with the orders in place, the price for all domestic GOES fell, despite the domestic industry's unsuccessful attempt to raise prices. Id. at 49-53. Additionally, the evidence showed that manufacturers in Canada and Mexico obtain the subject imports at prices lower than the domestic prices, and due to "heightened competition between domestic GOES purchasers and their competitors in Canada and Mexico," domestic purchasers would "seek out" the lower-priced subject imports if the orders were revoked. Id. at 50. Thus, the Commission concluded that even small amounts of increased import volume could negatively impact domestic GOES prices. Id. at 49.

With respect to the impact prong, the Commission found:

The price and volume declines would likely have a significant adverse impact on the production, shipment, sales, and revenue levels of the

domestic industry. This reduction in the industry's production, sales, and revenue levels would have a direct adverse impact on the industry's profitability as well as its ability to raise capital and make and maintain necessary capital investments.

Id. at 59. The Commission supported that statement with its findings during the initial GOES review, which demonstrated that the subject imports caused "lower sales, production, capacity utilization, employment, and profitability" for the domestic producers. Id. at 57. In this review, the domestic producers also warned that any further decrease in GOES price, which could occur if the orders were revoked, would create a "cost price squeeze and [that they] will likely experience a rapid loss in profitability." Id. at 56.

With respect to other considerations, the Commission found that the orders have had a positive impact on the domestic producers, see 19 U.S.C. § 1675a(a)(B), who have profited since issuance of the orders with increased operating margins, capacity, and efficiency. Initial Determination, slip op. at 20. The relatively high amount of the antidumping and countervailing duty margins also signifies a likely negative impact if the orders are revoked. See 19 U.S.C. § 1675a(a)(6) (listing the magnitude of the margins as a consideration on potential impact); see also 59 Fed. Reg. 41,431 (ITA Aug. 12, 1994) (setting the antidumping duty margins); 59 Fed. Reg. 29,984 (ITA June 10, 1994) (same); 59 Fed. Reg. 29,414 (ITA June 7, 1994) (setting a countervailing duty margin deposit).

For the reasons articulated above, we conclude that the Commission's affirmative determination in the Second Remand Determination is supported by substantial evidence.

## CONCLUSION

We hold that the Court of International Trade erred in concluding that the Commission's decision in the <u>Second Remand Determination</u> was not supported by substantial evidence. We therefore reverse the Court of International Trade's decision in <u>Nippon V</u>, vacate <u>Nippon VI</u> and the Commission's <u>Third Remand Determination</u>, and direct that the Court of International Trade reinstate the affirmative material injury determination issued by the Commission in the <u>Second Remand Determination</u>.

<u>REVERSED</u>

## COSTS

Each party shall bear its own costs.