Cecil E. FARLEY, Appellant,

v.

Anthony J. CELEBREZZE, Secretary of the Department of Health, Education and Welfare.

No. 14030.

United States Court of Appeals Third Circuit.

Argued Dec. 7, 1962.

Decided March 26, 1963.

Frank J. Kernan, Pittsburgh, Pa. (P. J. McArdle, Pittsburgh, Pa., on the brief) for appellant.

Pauline B. Heller, Attorney, Civil Division, Dept. of Justice, Washington, D. C. (Joseph D. Guilfoyle, Acting Asst. Atty. Gen., Joseph S. Ammerman, U. S. Atty., John G. Laughlin, Attorney, Department of Justice, Washington, D. C., on the brief), for appellee.

Before BIGGS, Chief Judge, STALEY, Circuit Judge, and LEAHY, District Judge.

LEAHY, District Judge.

Cecil E. Farley, claimant-appellant, brought this action in the District Court to review, in accordance with the provisions of 42 U.S.C. § 405(g), an order of the Secretary of Health, Education and Welfare, denying Farley disability benefits. The District Court was "unable to say that the findings of the Appeals Council [were] unsupported by substantial evidence"[1] and granted the Secretary's motion for summary judgment. Farley appeals.

1. The scope of appellate review in such cases is set out in § 405(g):

"The judgment of the court shall be final except that it shall be subject to review in the same manner as the judgment in other civil actions."

At the outset, the Secretary urges this court to clarify the roles of the United States Court of Appeals when reviewing cases which turn on the issue of whether the administrative ruling is supported by substantial evidence. The Secretary maintains that in social security cases solely involving a question of sufficiency of evidence in the administrative record to support an administrative finding, the scope of review of the Court of Appeals should be limited to determining whether the District Court "grossly misapplied" the substantial evidence test set forth in the statute. The argument is not totally devoid of merit. Unlike appeals from orders of various other administrative agencies which are made directly to this Court, social security cases are first heard by district courts which review case records in their entirety to test the sufficiency of the evidence to sustain any decision of the Secretary. Limiting the scope of judicial review, as proposed by defendant, would still insure each protagonist in a dispute over social security payments of one full scale judicial examination of the decision of the Appeals Council. But, it would not provide that fullness of review which Congress has demanded for applicants. As the 6th Circuit recently stated in rejecting the same argument as made here by the Secretary:

"We cannot accept this argument, for two reasons: (1) there is nothing to indicate that this was the intent of the Congress; and (2) the argument makes no provision for the established superintending power of the Supreme Court."[2]

We add one additional reason. Applicants for social security benefits are peculiarly in need of a full appellate review of the facts of their cases.[3] As Judge

1. Farley v. Ribicoff, W.D.Pa., 203 F.Supp. 721.

2. Roberson v. Ribicoff, 6 Cir., 1962, 299 F.2d 761, 763.

3. The Secretary's argument that administrative futility results from "a second complete review of the administrative record in the courts of appeals * * * in which no account is taken of and no weight is given to, the conclusion reached by the district courts on their review of the same record" is without foundation.

It should hardly require articulation to note that an appellate court gives great weight both to the reasoning and conclusions of the district courts. Justice Jackson noted in a different context, "There is no doubt that if there were a super-Supreme Court, a substantial proportion of our reversals of state courts would also be reversed. We are not final because we are infallible, but we are infallible only because we are final." Brown v. Allen, 344 U.S. 443, 540, 73 S. Ct. 397, 427, 97 L.Ed. 469.

Friendly of the 2nd Circuit has pointed out, courts have no right to expect that parties in social security cases will "normally have the assistance of counsel." [4] Indeed, as Judge Brown of the 5th Circuit has also suggested, "assistance by counsel is virtually an act of professional public service in view of the severe restrictions as to attorneys' fees." [5] Analogies between appellants in social security cases with those before other administrative agencies are thus a trifle strained.[6] Cases under 42 U.S.C. §§ 416(i) and 423 must be decided on a case by case basis depending on the particular facts of each separate litigation. It is difficult to apply general formulae to meet what is indigenous to each claimant who urges a special disability. Courts of Appeals serve a valuable function in this area.

■ Moreover, this Court has recently spoken on the issue raised here. In Braun v. Ribicoff, 3 Cir., 1961, 292 F.2d 354, 357, Chief Judge Biggs stated:

"In Boyd v. Folsom, [3 Cir.] 1958, 257 F.2d 778, we defined the scope of the review to be applied to the Secretary's decisions by United States district courts. We said, id. at page 781, that ultimate facts must be reached by a process of legal reasoning based on the legal significance to be afforded primary evidentiary facts and that therefore ultimate findings of fact by the Secretary were reviewable, citing Goldman v. Folsom, 3 Cir., 1957, 246 F.2d 776, 779. We also stated that, 'Our judicial duty * * * is to satisfy ourselves that the agency determination has warrant in the record, *viewing that record as a whole,* and a reasonable basis in law. Universal Camera

Corp. v. National Labor Relations Board, 1951, 340 U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. 456.' " (Italics added)

We here, once again, reaffirm these prior holdings.

2. Cecil E. Farley is a man of 60 with a seventh grade education. He worked from 1937 to March 2, 1956, the date of the allegedly disabling accident, in heavy construction work as a rigger. Prior to March 2, 1956 Farley had suffered the loss of one digit from his left thumb, one and one-half digits from his left index finger, and one digit from his left middle finger. These deformities did not, however, significantly impair his ability to do heavy labor.

On March 2, 1956, a large steel beam fell against Farley's right arm, crushing the middle upper arm through the elbow to the middle forearm, breaking and fragmenting the humerus, and badly damaging nerves, blood vessels, and soft tissue. Considerable muscle atrophy of the arm and radial nerve paralysis resulted. The arm is occupationally useless.[7] Farley underwent 8 operations from the date of the accident through April, 1959. He has testified he is unable to shave, cut food, or use a fork with his right hand; he is right-handed. He is unable with perfection to button his shirt, zip his fly, or tie his shoes. His wife assists him in dressing.

Dr. J. Gilbert Lloyd conducted a neuropsychiatric examination of Farley, at Government expense, and concluded as follows:

"This man has no use of the right arm and hand. The amputation of the distal joints of the thumb and

---

4. Kerner v. Flemming, 2 Cir., 1960, 283 F. 2d 916, 922, n. 9.

5. Butler v. Flemming, 5 Cir., 1961, 288 F.2d 591, 593, n. 3.

6. The Secretary's argument that "most claimants have limited financial resources * * * district court review involves much less expense," etc., may be, too, a

trifle disingenuous. It would seem the surest way for the Secretary to insure the protection of petitioners with limited financial resources would be for the Government to utilize with discretion its right of appeal where a district court has decided in favor of a petitioner.

7. The Appeals Council so found on the basis of testimony of examining doctors.

first two fingers of the left hand by a dynamite cap at fourteen should not be a handicap after all these years. His legs should not handicap him but he lays much stress on the bone removal. He has been subjected to so much surgery and treatment that I feel that he has developed a traumatic constitution. His right arm is useless for any work. His general neurotic disposition has conditioned him against his ever becoming useful to himself again. There is evidence that his wife overindulges him as she feels he needs her care to dress and undress. She carries the daily account of his progress throughout his illness in detail.

"Diagnosis:—Old fracture of the right humerus; radial nerve paralysis, traumatic neurosis."

Dr. Lloyd's was the only medical-neuropsychiatric testimony.

The Appeals Council held that the combination of "the absence of distal joints from the thumb and index finger from the claimant's left hand, when added to the impairment of his right upper extremity" did not require a finding of statutory disability. It found, as well, that Dr. Lloyd had not diagnosed "a severe condition" with respect to Farley's traumatic neurosis and that his mental condition could not result in a finding of disability.

In Hodgson v. Celebrezze, 3 Cir., 1963, 312 F.2d 260, Chief Judge Biggs stated:

"Our duty is to determine whether the court below was correct in holding that there was substantial evidence in the record to support the finding of the Examiner that Hodgson was not precluded by his physical condition from substantial gainful activity. * * * As was stated by the United States District Court for the Eastern District of Pennsylvania in Klimaszewski v. Flemming, 176 F.Supp. 927, 931 (1959), 'The test for disability consists principally of two parts: (1) a determination of the extent of the physical or mental impairment and (2) a determination whether that impairment results in an inability to engage in any substantial gainful activity'".

Farley's impairments are palpably *both* physical and mental. Taken alone, Farley's physical disabilities of total occupational uselessness of the right arm and partial uselessness of left fingers might well fall within the tests of statutory disability as set out in Hodgson, supra.[8] So might Farley's mental condition of having a traumatic neurosis[9] place him within the disabled class for the purposes of this statute.[10] But there is no need to consider mental and physical condition separately. We have come

---

8. Hodgson's disabilities consisted of "an impaired right-leg function" involving "a major loss of the mobility of the knee" and a "progressively worse" arthritic condition after his accident. Hodgson v. Celebrezze, supra.

9. Dr. Lloyd was the only doctor to give Farley a neuropsychiatric examination. Under such circumstances his diagnosis of traumatic neurosis should be accepted as binding. Cf. Teeter v. Flemming, 7 Cir., 1959, 270 F.2d 871, 77 A.L.R.2d 636; Hill v. Fleming, D.C.W.D.Pa., 1958, 169 F.Supp. 240, 245.

10. Traumatic neurosis, a disorder of the psyche or psychic functions in which an injury is the precipitating cause, has long

since been accepted by courts and physicians as resulting in serious physical as well as mental consequences. See Skelly v. Sunshine Mining Co., 62 Idaho 192, 109 P.2d 622; Soderquist v. McGough Bros., 210 Minn. 123, 297 N.W. 565; Klein v. Medical Bldg. Realty Co., La. App., 147 So. 122, 125; Humphries v. Delta Fire & Cas. Co., La.App., 116 So.2d 130, 132; Tate v. Gullett Gin Co. & Liberty Mut. Ins. Co., La.App., 86 So.2d, 698, 702. HUDDLESON, ACCIDENTS, NEUROSIS AND COMPENSATION (1932); HALL AND McKAY, "THE POST-TRAUMATIC NEUROSIS," 102 AMER. MED. ASSN. JOURNAL 510–513; GILLESPIE, PSYCHOLOGICAL EFFECTS OF WAR ON CITIZEN AND SOLDIER; GRINKER AND SPIEGEL, MEN UNDER STRESS.

708

too far in our knowledge of the interrelationship of mind and body totally to truncate one from the other in our considerations. Just as all physical and all mental impairments must be taken into account [11] in determining the extent of disability, so may physical and mental impairments in their totality result in a finding of disability.

■ Manifestly, this is such a case. Examination of the total physical and mental condition of Farley fails to provide any substantial evidence to support the Examiner's findings that Farley was *not* disabled.

■ 3. Determination whether Farley's impairments result in an inability to engage in substantial gainful employment must, too, be made, taking into account our conclusions in Hodgson, supra.

> "Not only must '[t]he capabilities of the individual * * * be viewed in context with his own physical, educational and vocational background', Sobel v. Flemming, 178 F.Supp. 891, 895 (E.D.Pa.1959), but also the following question must be asked and resolved: '[W]hat employment opportunities are there for a man who can do only what applicant can do? Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available.' Kerner v. Flemming, 283 F.2d 916, 921 (2 Cir., 1960)." (Italics added).

The Appeals Council concluded that although Farley was 57 years of age [now 60], although "his work experience has involved hard labor," although "his education has not been extensive," he could perform "light work." "[C]old though it may seem," the Council concluded, "we cannot ignore the fact that despite impairment, it is not necessarily impossible for persons of advanced age and limited education, if given the opportunity, to engage in some form of substantial gainful work." The frigidity of the test set out by the Appeals Council is exceeded only by its rigidity. It need not be "necessarily impossible" for Farley to find work for him to be entitled to disability benefits. "The word 'any' [substantial gainful activity] must be read in the light of what is reasonably possible, not of what is conceivable." [12] Nothing in the record before us suggests any such reasonable possibility for Farley. The Secretary argues that studies indicate persons with equal or greater disabilities than Farley have obtained employment in the past; persons with their right arms amputated at the shoulder, for example, have worked as delivery men, demonstrators, doormen, elevator operators, embroiderers, etc., etc., etc.[13] But, we must concentrate our attention on the Cecil E. Farley here, with his education and background, his abilities, and his disabled right arm, missing left fingers, and traumatic neurosis. For "[i]t was not the intention of Congress * * * to exact as a condition precedent to the maintenance of a claim the elimination of every possibility of gainful employment." Klimaszewski v. Flemming, E.D.Pa., 176 F.Supp. 927, 932. After an examination of the record, we find no reasonable possibility of Cecil E. Farley finding suitable employment.

We cannot agree with the decision of the court below that Farley has not met the statutory test. The judgment will be reversed and the cause remanded with direction to enter summary judgment for the plaintiff.

11. Cf. Braun v. Ribicoff, 3 Cir., 1961, 292 F.2d 354; Yeckabofsky v. Ribicoff, D.C. E.D.Pa.1962, 206 F.Supp. 452 (Ganey, J.).

12. Hodgson v. Celebrezze, supra, citing Klimaszewski v. Flemming, supra.

13. Anderson, The Disabled Man and His Vocational Adjustment, a Study of the Types of Jobs held by 4,404 Orthopedic Cases in Relation to the Specific Disability (1932).