Frank A. BUJNOVSKY

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare.

Civ. A. No. 32874.

United States District Court
E. D. Pennsylvania.

Nov. 14, 1963.

**474**

Harry W. Lightstone, Pottsville, Pa., for plaintiff.

Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., by Merna B. Marshall, Asst. U. S. Atty., for defendant.

WOOD, District Judge.

The claimant in this case filed an application for disability insurance benefits and to establish a period of disability on March 7, 1961, alleging that he had become unable to engage in any substantial gainful activity since September 7, 1960, at age 44, because of anthracosilicosis and a heart condition.

The hearing examiner on September 20, 1962, concluded that the plaintiff was not disabled within the meaning of the Act. The Appeals Council denied the plaintiff's request for review of the examiner's decision on December 20, 1962. Thus, this decision of the hearing examiner became the final decision of the Secretary of Health, Education and Welfare (Secretary). Dupkunis v. Celebrezze, 3 Cir., 323 F.2d 380; and Goldman v. Folsom, 246 F.2d 776, 778 (3 Cir. 1957).

The plaintiff commenced a civil action in this Court to review the Secretary's decision under 42 U.S.C.A. § 405(g) and both parties have filed cross motions for summary judgment which are the subject of this Opinion.

The plaintiff had been a machinist and welder around coal breakers repairing broken machinery parts in the three years before September 7, 1960, when he became unable to work allegedly because of anthracosilicosis. Both jobs required the plaintiff to climb ladders and walk about the premises to get at the particular equipment in need of repair. While climbing up one of these ladders at the breaker, the claimant experienced what was said to be a heart attack in July 1959.

Doctor Dougherty, the plaintiff's family physician, examined the plaintiff, whose chief complaints were shortness of breath upon exertion, occasional coughing spells and high blood pressure, on March 8, 1961, and reported that his diagnosis was that the plaintiff was suffering from anthracosilicosis and from coronary artery disease with some myo-

cardial damage and that the plaintiff became unable to work and was totally disabled by reason of those conditions as of September 7, 1960. The same physician in his report of January 30, 1962 diagnosed the plaintiff's condition as being anthracosilicosis with pulmonary emphysema and again stated that the plaintiff was totally disabled as a result of these conditions.

In no report did Doctor Dougherty include detailed clinical evidence such as: (1) specific electrocardiographic discrepancies; (2) specific X-ray findings concerning the condition of plaintiff's lungs, as distinguished from the medical conclusion formed thereon; (3) specific X-ray or fluoroscopic results indicating heart enlargement or other complication; (4) results of ventilation studies giving accurate measurements of plaintiff's residual breathing capacity; or (5) results of exercise tolerance tests indicating the level of activity productive of acute symptoms.

Section 404.1524 of Social Security Administration Regulations No. 4 (20 C.F.R. 404.1524) dealing with the type of medical evidence required to satisfy the plaintiff's burden of proof provides in part as follows:

> "Medical reports, copies of medical records or other medical evidence submitted to substantiate an allegation that an individual is under a disability shall include pertinent *clinical facts, medical history, results and interpretations of any laboratory and diagnostic tests*, and treatment and response. * * * such evidence shall also describe the individual's capacity to perform significant functions such as the capacity to sit, stand, or move about, travel, handle objects, hear or speak, and, in cases of mental impairment, the ability to reason or to make occupational, personal or social adjustments. The clinical and laboratory findings shall be sufficiently comprehensive and detailed to permit the

Secretary to make determinations as to the nature and limiting effects of the individual's physical or mental impairment or impairments for the period in question, his ability to engage in physical and mental activities, and the probable duration of such impairment." (Emphasis supplied)

About March 8, 1961, the plaintiff was examined by Dr. Dessen, a radiologist, who reported after an X-ray examination that heart, mediastinal structures and diaphragm were normal and that the plaintiff's chest was negative except for signs of early second stage silicosis with moderate emphysema.

The plaintiff was also examined by a Dr. Vastine, an internist, who gave the plaintiff a physical examination, laboratory studies, fluoroscopy, electrocardiograph, ventilation studies and clinical observations on exercising. All of these tests caused him to conclude that the plaintiff had only a moderate pulmonary insufficiency due to anthracosilicosis with emphysema and that he did not suffer from any cardiovascular disease of any description.

Some of the clinical findings were as follows: normal blood pressure and pulse; normal eye grounds; no cardiac (heart) enlargement (on physical examination, by fluoroscopy, or by electrocardiogram) no enlargement of aorta (by X-ray or on physical examination) normal heart sounds; normal heart rate and rhythm (on physical examination and by electrocardiogram); no edema; no varicosities; no observable dyapnea, cyanosis or clubbing; no evidence of pulmonary heart disease by electrocardiogram; no evidence of recent or old infarcation (heart attack) by electrocardiogram; no evidence of insufficient supply of blood to the heart by electrocardiogram.

■ While the plaintiff's family physician, Dr. Dougherty, had made a diagnosis of coronary artery disease with my-

ocardial damage and slight ventricular enlargement, this diagnosis was not supported by appropriate clinical findings and conflicted with the detailed clinical evidence supplied by Doctors Vastine and Dessen. The resolution of this conflict was for the hearing examiner, the trier of fact. Snyder v. Ribicoff, 307 F.2d 518 (4 Cir. 1962).

The hearing examiner concluded that the objective medical evidence failed to sustain the existence of a heart impairment. The clinical findings relative to the applicant's heart were all essentially normal and the hearing examiner decided that the plaintiff had failed to meet his burden of proof in that he had failed to establish the existence of any severe functional impairment for the pertinent period during which his application had validity.

■ Our function at this juncture of the proceedings is to determine whether there was substantial evidence to support the finding of the Secretary that the plaintiff was not prevented by his physical condition from any substantial gainful activity. The test for disability consists principally of two parts: (1) a determination of the extent of the physical or mental impairment and (2) a determination whether that impairment results in an inability to engage in any substantial gainful activity. Klimaszewski v. Flemming, 176 F.Supp. 927, 931 (E.D.Pa.1959); Hodgson v. Celebrezze, 312 F.2d 260, 263 (3 Cir. 1963); Farley v. Celebrezze, 315 F.2d 704 (3 Cir. 1963); Stancavage v. Celebrezze, 3 Cir., 323 F.2d 373

■ After careful consideration of the record, it is our determination that there is substantial evidence to support the Secretary's findings as to the extent of the plaintiff's physical impairment. The opinion of Dr. Dougherty that the plaintiff was totally disabled simply cannot be reconciled with the more specialized clinical studies that were performed in addition to the chest X-rays.

However, we find no support in the record with respect to the second part of the test for disability. The only reference to the plaintiff's occupational capacities is the medical certificate of Dr. Dougherty on January 19, 1962, that the plaintiff "cannot do any work of any kind." While this opinion is to be discounted to some degree because it is based upon a conflicting view of the medical evidence, it is the only opinion in the record on this point to aid the Secretary in reaching a just evaluation of what the plaintiff can do.

In a letter to the plaintiff, dated October 4, 1961, wherein the Secretary denied the plaintiff's request for reconsideration, it is stated at paragraph 3 in part as follows:

"The evidence does not indicate, however, that you experience any severe symptoms when performing light physical activity. Since you are able to do light work, you cannot qualify for disability benefits as the law requires that your medical condition prevent any type of substantial gainful work." (Tr. 39)

We disagree and "we are not persuaded that such evidence moves far enough away from the realm of conjecture and theory when applied to the facts before us." Stancavage v. Celebrezze, supra.

The general statement that the plaintiff can perform "light physical activity" is not very meaningful. "There must be something more tangible establishing what employment opportunities there are for a man with his impairment." Stancavage v. Celebrezze, supra.

The Court of Appeals in Stancavage rejected the Secretary's

" * * * suggestion that there is a list of '221 jobs that can be performed by persons with minimal education and that are sedentary in

character or require only *light exertion*' is not very meaningful." (Emphasis supplied)

In this case the plaintiff has demonstrated his inability to do the work of the character he performed at the colliery (Tr. 23, 39).[1] He also showed that while *he thought*[2] he could do *light* work, no such *light work* opportunities were available to him in the area. He was refused *light work* in the colliery, a toy factory and a supermarket because of his alleged disability (Tr. 23–24–25).

There has been no attempt by the Secretary to show that *light* work of a *specific* nature "reasonably possible" is available to the plaintiff. The record is barren both in the testimony and in the examiner's opinion of any specific job which the plaintiff could perform. In the absence of such a showing we cannot sustain the denial of benefits to Bujnovsky. Hodgson v. Celebrezze, supra at p. 263.

In Hodgson and Farley, supra, the examiner had made an adverse determination to the plaintiffs because they had the ability to perform *light* work. "Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available." Kerner v. Flemming, 283 F.2d 916, 921 (2 Cir. 1960). The plaintiff's motion for summary judgment is granted.

### ORDER

And now, this 14th day of November, 1963, the plaintiff's motion for summary judgment is GRANTED and the defendant's motion is denied and the case is remanded to the Secretary to determine the period of disability and the benefits to which the plaintiff is entitled in accordance with this Opinion.

1. Dupkunis v. Celebrezze, supra. In an Opinion filed the same day as Stancavage, the Court of Appeals for the Third Circuit affirmed the denial of benefits to the plaintiff because he failed to show his inability to do work of the character he performed at Bethlehem Steel.

2. The plaintiff's physician has since concluded that he is unable to perform any kind of work because of his disability. (Tr. 52)