NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**NSK CORPORATION, NSK LTD., AND NSK EUROPE LTD.,**
*Plaintiffs-Appellees,*

AND

**FAG ITALIA, S.P.A., SCHAEFFLER GROUP USA, INC., SCHAEFFLER KG, THE BARDEN CORPORATION, AND THE BARDEN CORPORATION (U.K.) LTD.,**
*Plaintiffs-Cross Appellants,*

AND

**JTEKT CORPORATION AND KOYO CORPORATION OF U.S.A.,**
*Plaintiffs-Appellees,*

AND

**SKF AEROENGINE BEARINGS UK AND SKF USA INC.,**
*Plaintiffs-Cross Appellants,*

v.

**UNITED STATES INTERNATIONAL TRADE COMMISSION,**
*Defendant-Appellant,*

AND

**THE TIMKEN COMPANY,**
*Defendant-Appellant.*

2011-1362, -1382, -1383, -1454

Appeals from the United States Court of International Trade in consolidated Nos. 06-CV-0334, 06-CV-0335, and 06-CV-0336, Judge Judith M. Barzilay.

## ON PETITION FOR PANEL REHEARING AND REHEARING EN BANC

Before RADER, *Chief Judge*, NEWMAN, LOURIE, DYK, PROST, MOORE, O'MALLEY, REYNA, WALLACH, and CHEN, *Circuit Judges*.[1]

PER CURIAM.

LOURIE, DYK, PROST, MOORE, and O'MALLEY, *Circuit Judges*, concurring in the denial of the petition for rehearing en banc.

WALLACH, *Circuit Judge*, with whom RADER, *Chief Judge*, and REYNA, *Circuit Judge*, join, dissenting from denial of the petition for rehearing *en banc*.

ROBERT A. LIPSTEIN, Crowell & Moring, LLP, of Washington, DC, filed a combined petition for panel rehearing and rehearing en banc for plaintiffs-appellees NSK Corporation, et al. With him on the petition was ALEXANDER H. SCHAEFER. NEIL R. ELLIS, Sidley Austin LLP, of Washington, DC, jointly filed the combined

---

[1] Circuit Judges Taranto and Hughes did not participate.

petition for plaintiffs-appellees JTEKT Corporation and Koyo Corporation of U.S.A. With him on the petition was CARTER G. PHILLIPS.

DAVID A.J. GOLDFINE, Attorney Advisor, Office of the General Counsel, United States International Trade Commission, of Washington, DC, filed a response to the petition for defendant-appellant United States International Trade Commission. With him on the response were PAUL R. BARDOS, Acting General Counsel, and NEAL J. REYNOLDS, Assistant General Counsel for Litigation.

TERENCE P. STEWART, Stewart and Stewart, of Washington, DC, filed a response to the petition for defendant-appellant The Timken Company. With him on the response were GEERT DE PREST, ERIC P. SALONEN and PHILIP A. BUTLER.

_____

**O R D E R**

A combined petition for panel rehearing and rehearing en banc was filed by plaintiffs-appellees, and responses thereto was invited by the court and filed by defendants-appellants. The petition for rehearing was referred to the panel that heard the appeal, and thereafter the petition for rehearing en banc and responses were referred to the circuit judges who are authorized to request a poll of whether to rehear the appeal en banc. A poll was requested, taken, and failed.

Upon consideration thereof,

IT IS ORDERED THAT:

(1) The petition of plaintiffs-appellees for panel rehearing is denied.

(2)  The petition of plaintiffs-appellees for rehearing en banc is denied.

(3)  The mandate of the court will issue on November 1, 2013.

FOR THE COURT

October 25, 2013
Date

/s/ Daniel E. O'Toole
Daniel E. O'Toole
Clerk

NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**NSK CORPORATION, NSK LTD.,**
AND **NSK EUROPE LTD.,**
*Plaintiffs-Appellees,*

AND

**FAG ITALIA, S.P.A., SCHAEFFLER GROUP USA, INC., SCHAEFFLER KG, THE BARDEN CORPORATION,** AND **THE BARDEN CORPORATION (U.K.) LTD.,**
*Plaintiffs-Cross Appellants,*

AND

**JTEKT CORPORATION** AND **KOYO CORPORATION OF U.S.A.,**
*Plaintiffs-Appellees,*

AND

**SKF AEROENGINE BEARINGS UK** AND **SKF USA INC.,**
*Plaintiffs-Cross Appellants,*

v.

**UNITED STATES INTERNATIONAL TRADE COMMISSION,**
*Defendant-Appellant,*

AND

**THE TIMKEN COMPANY,**
*Defendant-Appellant.*

---

2011-1362, -1382, -1383, -1454

---

Appeals from the United States Court of International Trade in consolidated Nos. 06-CV-0334, 06-CV-0335, and 06-CV-0336, Judge Judith M. Barzilay.

---

LOURIE, DYK, PROST, MOORE, and O'MALLEY, *Circuit Judges*, concurring in the denial of the petition for rehearing en banc.

We concur in the decision of the court not to rehear this case en banc. Contrary to the urgings of the dissenters from the denial of rehearing en banc, there is no legal justification for this court to adopt a rule requiring deference to the substantial evidence determinations of the Court of International Trade.

1. Under the Administrative Procedure Act ("APA"), when district courts review agency action for substantial evidence, and the district court decisions are reviewed by courts of appeals, the appellate courts conduct a non-deferential second level of substantial evidence review, applying the same standard as the district court.

Every circuit has adopted that position, including this court. *See Associated Fisheries of Maine, Inc. v. Daley*, 127 F.3d 104, 109 (1st Cir. 1997); *City of New York v. Shalala*, 34 F.3d 1161, 1166 (2d Cir. 1994); *Farley v. Celebrezze*, 315 F.2d 704, 705-06 (3d Cir. 1963); *Leftwich v. Gardner*, 377 F.2d 287, 288 (4th Cir. 1967); *Knox v. Finch*, 427 F.2d 919, 920 (5th Cir. 1970); *Lubrizol Corp. v. Train*, 547 F.2d 310, 317 (6th Cir. 1976); *Hanson v. Espy*, 8 F.3d 469, 472 (7th Cir. 1993); *First Nat'l Bank of Fayetteville v. Smith*, 508 F.2d 1371, 1374 (8th Cir. 1974); *Asarco, Inc. v. EPA*, 616 F.2d 1153, 1161 (9th Cir. 1980);

*Thomas Brooks Chartered v. Burnett*, 920 F.2d 634, 644 (10th Cir. 1990); *Druid Hills Civic Ass'n v. Federal Highway Admin.*, 772 F.2d 700, 714 (11th Cir. 1985); *Polcover v. Sec'y of the Treasury*, 477 F.2d 1223, 1226 (D.C. Cir. 1973); *cf. Rio Grande, El Paso and Santa Fe R. Co. v. Dep't of Energy*, 234 F.3d 1, 6 (Fed. Cir. 2000) ("Because we review the agency action on the identical basis as did the district court, no particular deference is accorded to the conclusions of the district court." (internal quotation marks omitted)).

2. The dissenters rely heavily on the Supreme Court's decision in *Universal Camera v. National Labor Relations Board*, 340 U.S. 474 (1951). That case, however, addressed the special role of the Supreme Court in the review of agency action. The Court declared that in such cases it will confine itself to deciding whether courts of appeals have "misapprehended or grossly misapplied" the proper standard of review. *Id.* at 491. The Court did not suggest that the "misapprehended or grossly misapplied" standard should apply to court of appeals review of district courts in administrative review proceedings.

All the courts of appeals that have addressed the issue have read *Universal Camera* as applying to the Supreme Court's role in the process, not the role of the courts of appeals. *See Celebrezze v. Bolas*, 316 F.2d 498, 501 (8th Cir. 1963) (Blackmun, J.); *Ward v. Celebrezze*, 311 F.2d 115, 116 (5th Cir. 1962); *Roberson v. Ribicoff*, 299 F.2d 761 (6th Cir. 1962). Those courts have treated the Supreme Court's remarks in *Universal Camera* as referring to its own role vis-à-vis the courts of appeals, not the role of all second-level reviewing courts.

That is the correct reading of the pertinent passage from *Universal Camera*. The full text of the Court's pertinent remarks in that case is as follows:

> Our power to review the correctness of application of the present standard ought seldom to be

called into action. Whether on the record as a
whole there is substantial evidence to support
agency findings is a question which Congress has
placed in the keeping of the Courts of Appeals.
This Court will intervene only in what ought to be
the rare instance when the standard appears to
have been misapprehended or grossly misapplied.

*Universal Camera,* 340 U.S. at 490-91. The references to
"our power" and the intervention of "this Court" speak to
the Court's self-imposed limits on its reviewing authority;
the Court effectively announced that it would not exercise
that power frequently in such cases, and certainly not to
make routine corrections of wrong decisions in substantial
evidence agency review cases. That announcement is
entirely consistent with the Court's regular characteriza-
tion of its role as not being a court of error. None of that
applies to courts of appeals, which are decidedly courts of
error.

That view of *Universal Camera* is buttressed by the
Supreme Court's decision in *FTC v. Standard Oil Co.,* 355
U.S. 396 (1958). There, citing *Universal Camera* among
other decisions, the Court explained that it had no inten-
tion of conducting review of the evidence in the case based
on the Court's "usual rule of non-interference where
conclusions of Circuit Courts of Appeals depend on appre-
ciation of circumstances which admit of different interpre-
tations." *Standard Oil Co.,* 355 U.S. at 400-01. That
statement, like the similar statement in *Universal Cam-
era,* refers to the Court's special (and necessarily limited)
role in judicial review of agency action; it does not suggest
a limited role for second-level reviewing courts engaged in
judicial review of administrative action.

A major problem with relying on *Universal Camera* as
the basis for deferring to the Court of International Trade
in substantial evidence cases is that it proves too much.
If *Universal Camera* requires deference in second-tier

substantial evidence review cases, it requires that deference in all such cases, not just trade cases coming from the Court of International Trade. So if we rely on *Universal Camera* as the basis for adopting a deferential standard in Court of International Trade cases, our rationale is necessarily contrary to all the other circuits (and at least in tension with our own decision in the *Rio Grande* case, cited above).

3. There is nothing in the statutes providing for review of agency action by the Court of International Trade that makes that kind of review different from conventional APA review. The pertinent review provisions of the trade statutes track the APA. At the time it enacted those statutes, Congress expressed a desire that agency review by the Court of International Trade and this court would be modeled on APA review. And the Court of Customs and Patent Appeals ("CCPA"), our predecessor in second-level administrative review in trade cases, approved the use of APA-type review in antidumping cases, including the "duplicative" second review of the substantial evidence issue.

Prior to the enactment of the Trade Agreements Act of 1979, which established the main components of the current system of judicial review in antidumping cases, the Customs Court and the CCPA (on review of Customs Court decisions) were both given very limited authority to review decisions of the Treasury Department and the Tariff Commission (predecessors to the Commerce Department and International Trade Commission, respectively). Ordinarily, those courts were not even permitted to review the agencies' decisions for substantial evidence; review was limited, normally, to certain purely legal issues. *See City Lumber Co. v. United States*, 457 F.2d 991, 994 (CCPA 1972); *Kleberg & Co. v. United States*, 71 F.2d 332 (CCPA 1933). An exception to that highly deferential review by both reviewing courts was in cases in which the administrative record was deemed inadequate,

in which case the Customs Court would conduct de novo review, creating a record of its own, which would then be reviewed deferentially by the CCPA. *See Armstrong Bros. Tool Co. v. United States*, 626 F.2d 168, 169 n.2 (CCPA 1980) (citing *ASG Indus., Inc. v. United States*, 610 F.2d 770 (CCPA 1979)). In those cases in which there was an adequate administrative record and review was conducted on that record, the scope of the review in the Customs Court and in the CCPA appeared to be the same, with the CCPA not deferring to the conclusion of the Customs Court as to the lawfulness of the agency's action. *See, e.g., Imbert Imports, Inc. v. United States*, 475 F.2d 1189 (CCPA 1973).

Because of congressional dissatisfaction with the scope of judicial review of antidumping orders pursuant to the Trade Act of 1974, the Trade Agreements Act of 1979 created the scheme that is now in place. Congress made clear that the Customs Court was not to conduct de novo review of the pertinent administrative determinations, but was to review those determinations pursuant to traditional principles of administrative law, i.e., the APA. The legislative history of the 1979 Act explains:

> Section 516A would make it clear that traditional administrative law principles are to be applied in reviewing antidumping and countervailing duty decisions where by law Congress has entrusted the decision-making authority in a specialized, complex economic situation to administrative agencies. . . . Review of determinations listed in subsection (a)(2) would proceed upon the basis of a formal administrative record and the standard of review provided is "unsupported by substantial evidence on the record or otherwise not in accordance with law" [i.e., language taken directly from the APA].

S. Rep. No. 96-249, at 252 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 638. Neither the 1979 Act nor the legislative history adverted to the standard of review to be applied by the CCPA in reviewing Customs Court decisions.[1] However, various features of the legislation support the inference that, while both the Customs Court and the CCPA were expected to defer to the agencies, the CCPA was not supposed to defer to the Customs Court. Of particular significance in that regard are: (1) Congress's decision to adopt the APA standard for Customs Court review of the agency decisions; (2) Congress's determination that Customs Court review should be limited and based on the administrative record; and (3) Congress's failure to suggest any deviation from standard APA practice for second-tier review support. Indeed, in a decision issued shortly after the 1979 Act, that is how the CCPA characterized its role in the review process. *See Armstrong Bros.*, 626 F.2d at 170 ("[W]e conclude that the issue before this court in this case is properly stated to be whether the Customs Court correctly held that the Commission's determination is supported by

---

[1] The dissenting opinion refers to a statement from the legislative history of the 1979 Act indicating Congress's intent to "eliminate *de novo* review of assessments made pursuant to the antidumping and countervailing duty laws." H.R. Rep. No. 96-317, at 181 (1979). The context of that statement and other similar statements in the legislative history makes clear that the reports were referring to eliminating de novo review of the agency's determinations, not eliminating de novo appellate review of the trial court's substantial evidence rulings. Shortly after the quoted material, the report explains that "the bill generally provides for a standard of review whereby *the administrative level determination is upheld unless unsupported by substantial evidence.*" *Id.* (emphasis added); *see also* S. Rep. No. 96-249, at 247-48 (1979).

substantial evidence in the record. . . . [T]he sole standard of review of factual determinations of injury or likelihood of injury in antidumping cases [is] whether the Commission's determination is supported by substantial evidence."). Thus, as of the time that the Customs Court was converted to the Court of International Trade and the CCPA was succeeded by this court, it appears that it was settled that judicial review of antidumping determinations was to be conducted pursuant to APA-type standards and that the review conducted by the trial court and by the second-tier reviewing court would be the same—determining whether there was substantial evidence in the record before the agency to justify the agency's determination. Under those circumstances, it is not surprising that, four years after *Armstrong Bros.*, this court adopted the *Atlantic Sugar* de novo standard as the proper standard for our review of Court of International Trade decisions in substantial evidence cases.

As noted, the standards for review of administrative action set forth in section 1516a(b) are exactly the standards set forth in section 706 of the APA. Section 1516a(b) identifies certain determinations, findings, and conclusions that are to be held unlawful if found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 19 U.S.C. §§ 1516a(b)(1)(A), 1516a(b)(1)(B)(ii) (the same language that is found in the APA, 5 U.S.C. § 706(2)(A)), and it identifies other determinations, findings, and conclusions (including Commission findings as to material injury, at issue here), that are to be held unlawful if "unsupported by substantial evidence," 19 U.S.C. § 1516a(b)(1)(B)(i) (the same language that is found in the APA, 5 U.S.C. § 706(2)(E)). *See also* 28 U.S.C. § 2640(b) (specifying section 1516a(b) as providing the standard of review in antidumping and countervailing duty cases). There is thus every reason to believe that Congress intended the judicial review process in the trade area to track the more general review process in

district courts and courts of appeals under the APA. If
that is so, the APA rule regarding de novo consideration
of the issue of substantial evidence by courts of appeals
comes into play.

4. Nor is there anything anomalous or peculiar about
a court of appeals applying a de novo standard when
reviewing a trial court's determination regarding the
sufficiency of evidence on which a particular tribunal
based its decision.

Besides all the APA cases involving second-tier sub-
stantial evidence review of administrative action, there
are several important categories of cases in which courts
of appeals routinely conduct de novo review of trial court
decisions as to the sufficiency of the evidence. For exam-
ple, when a court of appeals reviews a district court's
grant or denial of JMOL, the court of appeals does not
defer to the trial court's decision. In reviewing the suffi-
ciency of the evidence, the court of appeals applies the
same standard that the trial court applied. Similarly, in
the summary judgment context, the court of appeals does
not defer to the trial court's determination that the plain-
tiff's evidentiary showing was insufficient to avoid sum-
mary judgment. While the summary judgment decision,
like the JMOL decision, may involve facts, it presents a
legal issue as to the sufficiency of those facts under the
governing legal standard. The same is true of an admin-
istrative substantial evidence review.

5. The dissenters argue that in light of the special ex-
pertise of the Court of International Trade, it would be
sound policy to defer to the Court of International Trade's
substantial evidence decisions. Whether that is so or not,
it is not the system that Congress created in 1979. Under
these circumstances, a change in our review process is a
matter that is appropriately left to legislative action, not
judicial modification. Moreover, it is important to note
that in conducting de novo review of substantial evidence

determinations, this court does not ignore the decisions of the Court of International Trade; instead, as we have stated on numerous occasions, we pay close attention to the Court of International Trade's analysis. *See Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006) ("[W]e give great weight to the informed opinion of the Court of International Trade. . . . Indeed, it is nearly always the starting point of our analysis." (internal quotation marks omitted)); *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978, 983 (Fed. Cir. 1994) ("Although reviewing anew the ITC determination, this court will not ignore the informed opinion of the Court of International Trade. That court reviewed the record in considerable detail. Its opinion deserves due respect."). Thus, it is incorrect to suggest that the *Atlantic Sugar* standard renders superfluous the Court of International Trade's decisions on issues of substantial evidence.

In sum, the *Atlantic Sugar* standard of review is consistent with principles of judicial review of administrative action as well as judicial review principles applied in other contexts, and the trade statutes make clear that Congress intended to apply those principles to this court's review of the decisions of the Court of International Trade. There is thus no need or justification for this court to jettison the *Atlantic Sugar* rule.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**NSK CORPORATION, NSK LTD.,**
AND **NSK EUROPE LTD.,**
*Plaintiffs-Appellees,*

AND

**FAG ITALIA, S.P.A., SCHAEFFLER GROUP USA, INC., SCHAEFFLER KG, THE BARDEN CORPORATION,** AND **THE BARDEN CORPORATION (U.K.) LTD.,**
*Plaintiffs-Cross Appellants,*

AND

**JTEKT CORPORATION** AND **KOYO CORPORATION OF U.S.A.,**
*Plaintiffs-Appellees,*

AND

**SKF AEROENGINE BEARINGS UK** AND **SKF USA INC.,**
*Plaintiffs-Cross Appellants,*

v.

**UNITED STATES INTERNATIONAL TRADE COMMISSION,**
*Defendant-Appellant,*

AND

**THE TIMKEN COMPANY,**
*Defendant-Appellant.*

———————————————

2011-1362, -1382, -1383, -1454

———————————————

Appeals from the United States Court of International Trade in consolidated Nos. 06-CV-0334, 06-CV-0335, and 06-CV-0336, Judge Judith M. Barzilay.

———————————————

WALLACH, *Circuit Judge*, with whom RADER, *Chief Judge*, and REYNA, *Circuit Judge*, join, dissenting from denial of the petition for rehearing *en banc*.

According to statute, the United States Court of International Trade ("CIT") reviews the International Trade Commission's ("ITC") material injury determinations for substantial evidence. 19 U.S.C. § 1516a(b) (2006). This court currently reviews the CIT's substantial evidence determinations *de novo*. *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1559 n.10 (Fed. Cir. 1984). Perhaps recognizing the duplicative and inefficient nature of *de novo* review, this court has inconsistently applied that standard in the almost thirty years since *Atlantic Sugar* was decided. Most notably, the CIT's remands to the ITC for additional explanation are reviewed deferentially for an abuse of discretion, but remands for additional findings are reviewed *de novo*. There is no statutory or practical basis to distinguish the two.

I believe this conflict should be resolved in favor of deferential review, consistent with the "misapprehended or grossly misapplied" standard articulated by the Supreme Court in *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 491 (1951).[1] Under

———————————————

[1] *Universal Camera* was an appeal from the Second Circuit's review of a National Labor Relations Board

that review, the CIT's substantial evidence determinations would be reversed only if the CIT "misapprehended

---

enforcement order, which is reviewed in the first instance by the regional circuit courts of appeal. 340 U.S. at 491. The Supreme Court has also applied the "misapprehended or grossly misapplied" standard in other contexts where Congress placed the substantial evidence standard in the keeping of the courts of appeals. *See, e.g., Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 522–23 (1981) (regulations issued by Occupational Safety and Health Administration); *Fed. Trade Comm'n v. Ind. Fed'n of Dentists*, 476 U.S. 447, 453 (2009) (Federal Trade Commission's order regarding unfair methods of competition).

Appellant Timken Company argues the "misapprehended or grossly misapplied" standard is not appropriate for second-level review at the courts of appeals. *See* Timken's Resp. in Opp'n to Pet. 7. In other words, appellant contends the standard is used by the Supreme Court in deciding to grant certiorari when the circuit court "misapprehended or misapplied" the substantial evidence standard. This is not so. For example, in *American Textile*, the Supreme Court granted certiorari, but ultimately concluded the court of appeals did not misapprehend or misapply the substantial evidence standard, and thus affirmed that aspect of the decision. *Am. Textile Mfrs.*, 452 U.S. at 530. Appellant is correct that the *Universal Camera* standard is not applied in all second-tier substantial review cases; rather, it addresses the role of a second-level reviewing court when Congress has allocated the substantial evidence review to a particular lower court. *Universal Camera*, 340 U.S. at 491. As discussed below, Congress has placed substantial evidence review of the ITC's material evidence determinations in the keeping of the CIT, and the statute makes no mention of this court engaging in that same review. 19 U.S.C. § 1516a(b).

or grossly misapplied" the substantial evidence standard.[2] *Id.* Deferential review is appropriate because of the CIT's unique appellate role and its institutional expertise in trade matters. Because of the conflict in this court's case law and the importance of this issue, I believe the *de novo* standard should be reconsidered *en banc.* I dissent from this court's contrary ruling.

## I. *Atlantic Sugar*

This court's application of the *de novo* standard, and the perennial challenges to its appropriateness, began with a single, unsupported footnote in *Atlantic Sugar*. 744 F.2d at 1559 n.10. Citing to *no* authority, the footnote stated: "We review [the CIT's] review of an ITC determination by applying anew the statute's express judicial review standard."[3] *Id.* "Other than citation to [19 U.S.C.] § 1516a, *Atlantic Sugar* gave no explanation for according no deference to decisions of the [CIT]." *Zenith Elecs. Corp. v. United States*, 99 F.3d 1576, 1580 (Fed. Cir. 1996) (Rader, J., concurring). The statute upon which *Atlantic Sugar* relied is located in the "Scope and Standard of Review" section of the "Court of International Trade Procedure" chapter of Title 28, and specifies that "the

---

[2] The appropriateness of the *Universal Camera* standard has been recognized by judges of this court. *See, e.g.*, *Zenith Elecs. Corp. v. United States*, 99 F.3d 1576, 1579 (Fed. Cir. 1996) (Plager, J., concurring) ("The *Universal Camera* standard utilized by the Supreme Court in similar situations makes eminently good sense. I would apply it here, as well as in comparable situations in which we review the judgment of a reviewing court which has already applied the substantial-evidence-in-the-record test to an initial adjudication."). *See* further discussion *infra* Part II.

[3] Despite this pronouncement, the *Atlantic Sugar* court's "substantial evidence" analysis comprises only the final page of its decision.

court shall review the matter as specified in [19 U.S.C. § 1516a(b)]" (which requires substantial evidence review).[4] 28 U.S.C. § 2640(b). Thus, Congress assigned substantial evidence review to the CIT and the statute makes no grant to this court of that same standard of review. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1350 (Fed. Cir. 2006). Congress designated the substantial evidence standard as "Court of International Trade Procedure." This court is bound by law to respect Congress' decision. *See Universal Camera*, 340 U.S. at 491 (adopting the "misapprehended or grossly misapplied" standard because Congress had placed substantial evidence review "in the keeping of the Courts of Appeals").

The legislative history of § 1516a(b) further weighs against *de novo* review. Congress adopted § 1516a(b) to "eliminate *de novo* review of determinations or assessments made pursuant to the antidumping and countervailing duty laws" because such review was "time-consuming and duplicative." H.R. Rep. No. 96-317, at 181 (1979). While this statement was made in reference to eliminating *de novo* review of agency determinations, to which "Congress has entrusted the decision-making authority in a specialized, complex economic situation," S. Rep. No. 96-249, at 252 (1979), *reprinted at* 1979 U.S.C.C.A.N. 381, 638, Congress clearly recognized the intense, fact-based nature of trade cases. Duplicative and burdensome review at the appellate level is inconsistent with Congress' professed goal of streamlining trade cases at the agency and trial court levels. It is evident that the overarching intent of the 1979 legislation was to eliminate the "time-consuming and duplicative" work that the *Atlantic Sugar* standard later imposed.

---

[4]    This subsection of the statute has not been revised since *Atlantic Sugar*, other than some renumbering. *See* 19 U.S.C. § 1516a(b)(1)(B)(i) (2006); 19 U.S.C. § 1516a (b)(1)(B) (1982).

## II. This Court's Case Law Under *Atlantic Sugar*

Members of this court have questioned the propriety of the *Atlantic Sugar* standard in the past and will continue to do so. *See, e.g., Zenith*, 99 F.3d at 1580 (Rader, J., concurring) ("Although bound to follow the *Atlantic Sugar* standard, I perceive that the statute and its history suggest that this court has misapprehended the proper standard of review."); *id.* at 1582 (Rader, J., concurring) ("Since *Atlantic Sugar,* this court has questioned either directly or by implication the propriety of duplicating the review of the [CIT]."). Indeed, while purporting to apply *de novo* review, the court has *sub silentio* adopted a modification giving "due respect" and/or "great weight" to the opinion of the CIT, indicating some unpredictable amount of deference the court believes the CIT's decisions command.[5] *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978, 983 (Fed. Cir. 1994); *Nippon Steel*, 458 F.3d at 1351.

---

[5]   This modified *Atlantic Sugar* standard is evident in this court's more recent decisions: "When performing a substantial evidence review, . . . we give *great weight* to the informed opinion of the [CIT]. Indeed, it is nearly always the starting point of our analysis." *Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007) (emphasis added) (citations and internal quotation marks omitted); *see also Taiwan Semiconductors Indus. Ass'n v. Int'l Trade Comm'n*, 266 F.3d 1339, 1343–44 (Fed. Cir. 2001) ("On substantial evidence questions, this court reviews the [CIT's] review of Commission decisions by stepping into the shoes of the [CIT] and duplicating its review under the standard in [the statute]. However, this court will not ignore the informed opinion of the [CIT] in performing its review. That court reviewed the record in considerable detail. Its opinion deserves *due respect*.") (emphasis added) (citations and internal quotation marks omitted).

Even more peculiar is this court's development of a bifurcated application of the *Atlantic Sugar* standard, which has no basis in the statute or in case law.  Under this approach, as articulated in *NSK* itself:

> The appropriate standard of review depends on the posture of the case.  When the [CIT] orders the Commission to enter a negative determination, this court steps into the shoes of the trade court and conducts a de novo review of whether the Commission's determinations are supported by substantial evidence.  This court also reviews the Commission's determinations for substantial evidence when the [CIT] "remand[s] to the Commission, giving it two options on how to proceed: [1] reopen the record in order to obtain substantial evidence to support its adverse impact conclusion or [2] make a determination that subject imports will have no adverse impact should the orders be revoked."  By contrast, we review remand orders issued by the [CIT] for abuse of discretion when the trade court does not assess the sufficiency of the evidence supporting the Commission's determinations or require additional investigation by the Commission, but "merely remand[s] the matter for additional explanation that would clarify the Commission's determination."

*NSK Corp. v. U.S. Int'l Trade Comm'n*, 716 F.3d 1352, 1363 (Fed. Cir. 2013) (quoting *Nippon Steel Corp. v. U.S. Int'l Trade Comm'n,* 494 F.3d 1371, 1378 (Fed. Cir. 2007); *Altx, Inc. v. United States,* 370 F.3d 1108, 1117 (Fed. Cir. 2004)).  The abuse of discretion standard in the court's current framework appears to have been first articulated in *Taiwan Semiconductors Industrial Association v. International Trade Commission*, which cites only to a Third Circuit case's passing mention of that standard. 266 F.3d 1339, 1344 (Fed. Cir. 2001) (citing *Marshall v.*

*Lansing*, 839 F.2d 933, 940 (3d Cir. 1988)). Thus, this court currently applies two different standards of review depending upon its interpretation of the CIT's remand instructions.

The distinction between remanding for additional explanation and remanding to reopen the record to provide additional support for adverse impact conclusions is not found in the trade statute, *see* 19 U.S.C § 1516a(c)(3), and does not follow common sense. There is simply *no* principled difference between when the CIT remands a case to the agency for further explanation or for additional evidence. In both situations, the CIT finds that a determination was not supported by substantial evidence and sends it back to the agency. Whether the CIT remands for clarification or for clarifying data is of little consequence. In fact, the CIT often gives the agency the *choice* of how to deal with the evidentiary insufficiency, suggesting the agency may reopen the record at its choosing. *See, e.g.*, *Tropicana Prods., Inc. v. United States*, 484 F. Supp. 2d 1330, 1354 (2007) ("If it finds it necessary or efficacious, the Commission may reopen the record."). Allowing an agency to effectively choose at whim this court's standard of CIT review is simply nonsensical.

In addition to its questionable provenance, this clumsy framework is unworkable. Indeed, even in *NSK*, the court wrestled with the question of whether the CIT had remanded for additional evidence or additional explanation in order to determine which standard to apply. *NSK*, 716 F.3d at 1363–64. Other cases portray a similar struggle, for there is no substantive difference between the two. *See, e.g.*, *Diamond Sawblades Mfrs. Coal. v. United States*, 612 F.3d 1348, 1356–58 (Fed. Cir. 2010) (providing a lengthy and labored analysis of whether the CIT's remand was for additional explanation or based on a finding of insufficient evidence); *Altx*, 370 F.3d at 1117 (including an extensive analysis of the appropriate standard of review). This court now applies two conflicting

standards of review in ITC cases and this conflict must be resolved *en banc.*

### III. Deference to the CIT's Decisions Is Appropriate

Deference in appeals where the CIT reviewed the ITC's material injury determinations is particularly warranted in light of the CIT's recognized expertise in international trade. *United States v. Haggar Apparel Co.*, 526 U.S. 380, 394 (1999) ("The expertise of the [CIT] . . . guides it in making complex determinations in a specialized area of the law . . . ."). This court has also acknowledged the expertise of the CIT: "To be sure, judges of the [CIT] are experts in [cases reviewing the Commission's material injury determinations], which form most of their docket, while this court's judges are characterized as generalists, as trade cases comprise only about six percent of the Federal Circuit docket." *Nippon Steel*, 458 F.3d at 1350. The inappropriateness of *de novo* review given this expertise has likewise been noted: "In addition to adding unnecessary time and expense to the appeal process, the *Atlantic Sugar* standard undercuts the benefits this court derives from the experience and expertise of the [CIT]." *Zenith*, 99 F.3d at 1583 (Rader, J., concurring).

The legislative history of the Customs Courts Act of 1980 repeatedly emphasizes the "specialized experience" of the Customs Court, the CIT's predecessor.[6] *See, e.g.,* H.R. Rep. No. 96-1235 (1980), *reprinted in* 1980

---

[6]    The legislative history also references the specialized experience of this court's predecessor, the United States Court of Customs and Patent Appeals. However, the jurisdiction of that court was considerably altered in the Federal Courts Improvement Act of 1982, when it was merged with the U.S. Court of Claims. Accordingly, "this court's judges are characterized as generalists," whereas "judges of the Court of International Trade are experts in [trade] cases." *Nippon Steel*, 458 F.3d at 1350.

U.S.C.C.A.N. 3729. This experience can be traced back to 1890, when the Customs Court began as "the board of general appraisers, an administrative unit within the Department of the Treasury, which was responsible for the review of decisions by Customs officials as to the rate and amount of duty imposed on imported merchandise, as well as the value of such merchandise." *Id.* at 18, *reprinted in* 1980 U.S.C.C.A.N. 3729, 3730 (Statement by Rep. Rodino). In the years that followed, "the court gradually became an integral part of the Federal judicial system," and in 1956 Congress declared it an Article III court. *Id.*

This unique appellate path from an agency to a specialized Article III court makes the CIT and its expertise in trade matters *sui generis* among Article III courts. This is especially true in reviewing antidumping issues, such as the ITC's material injury determinations. *See Ad Hoc Shrimp Trade Action Comm. v. United States,* 618 F.3d 1316, 1321 (Fed. Cir. 2010) (quoting *Int'l Trading Co. v. United States,* 281 F.3d 1268, 1274 (Fed. Cir. 2002) ("[T]he [CIT] 'has expertise in addressing antidumping issues and deals on a daily basis with the practical aspects of trade practice.'")).

In opposition to rehearing *en banc*, the Timken Company argues that there is nothing novel or anomalous about a court of appeals applying the *de novo* standard in reviewing a trial court's sufficiency of evidence determination, even in the context of specialty courts. Timken's Resp. in Opp'n to Pet. 3–6. There is no indication, it argues, that trade cases require different treatment. Such arguments disregard the CIT's unique procedures and its active role in supervising the development of administrative records in trade cases. The CIT is not simply a subject-specialty court; it also has a unique role in the litigation process.

Under its governing statute, the CIT either remands trade cases to the agency for further explanation or devel-

opment of the record, or it sustains the agency's determination. 19 U.S.C. § 1516a(c), (e). Unlike other settings, the agency's remand redetermination returns to the CIT (and to the same judge) for reexamination. In this typically multi-year, iterative process, the case is repeatedly remanded until the CIT finds the determination is supported by substantial evidence and therefore can be sustained. Parties cannot appeal a remand decision until the CIT ultimately sustains the agency's decision. Thus, when an appeal arrives at this court, we are tasked with reviewing multiple dispositions made over a period of years by the same judge.

Therefore, by the time a case is finally appealed to this court, the length and complexity of the case history make true "*de novo*" review wasteful and impracticable. Moreover, such a unique procedural environment highlights the *sui generis* character of the CIT. In no other situation does a court identify gaps in the evidence in an administrative record and task the agency with further explaining its determination or supplementing the record, over and over again until the substantial evidence threshold is met. Beyond being subject specialists, the judges of the CIT assume a unique role in overseeing the development of each of their cases.

This court often takes note of the complex procedural history of cases from the CIT. *See, e.g.*, *Nippon Steel*, 494 F.3d at 1373 ("The complex procedural history of this sunset review spans more than six years and includes four determinations by the Commission and six opinions from the [CIT]."); *Nippon Steel*, 458 F.3d at 1348 ("This antidumping case has a procedural history spanning six years, which now includes four determinations by the Commission, four opinions from the [CIT], and one prior opinion from this court."). Perhaps because no reviewing court could truly review such a process *de novo*, this court has opined on several occasions that a more appropriate standard may be whether the CIT "misapprehended or

grossly misapplied" the substantial evidence standard of review. *See, e.g.*, *Suramerica*, 44 F.3d at 982–83 n.1; *see also Zenith*, 99 F.3d at 1579 (Plager, J., concurring).

This case is a perfect example. As this court observed, the CIT engaged in "extensive" proceedings in which it authored six separate decisions and reviewed five successive injury determinations by the ITC. *NSK*, 716 F.3d at 1355. The CIT reviewed thousands of pages of record evidence, identified gaps in the ITC's findings, and ordered a series of targeted remands to resolve the insufficiencies, ultimately affirming a negative injury determination once it was satisfied with the ITC's determination. *Id.* at 1355–63. This court purportedly reviewed all of this *de novo* by reapplying the substantial evidence analysis. It did so with five and half pages of analysis, and in one fell swoop, it reversed and vacated the CIT's orders, and reinstated the ITC's affirmative injury determination, seven years into litigation.

As is evident, then, by applying the same standard as the CIT, the Federal Circuit renders the CIT's review superfluous and deprives litigants of the benefits of the CIT's subject-expertise, as well as its case-specific experience.[7] Replacing our current "*de novo*" standard with a more appropriate standard would restore the deference the CIT deserves as an expert court, and would remedy this inefficient and wasteful process. In addition, it would no longer "encourage[] disappointed litigants with deep pockets to seek a second bite at the apple, often with no visible benefits except to the litigators since generally we are not likely to reverse on that ground." *Zenith*, 99 F.3d at 1579 (Plager, J., concurring).

IV. Developments in Trade Law and Administrative Law

---

[7]    As noted, the same judge, here Judge Barzilay, handled the case through all iterations of remand and redetermination.

Significant developments in the areas of trade law and administrative law in the three decades since *Atlantic Sugar* was decided further weigh in favor of deference to the CIT. The trade regime has transformed dramatically over the past three decades, requiring the CIT to keep abreast of the near-constant developments in that area. These developments occur not just domestically, but at the international level. Hence, the judges of the CIT closely monitor the activity of international bodies, including the World Trade Organization. Predictably, then, there have been significant revisions to the trade statutes. Even the underlying legal standard in *Atlantic Sugar*— the "best information available rule"— has been replaced with the complex "facts available framework." *Compare* 19 U.S.C. § 1677e(b) (1982) *with* 19 U.S.C. § 1677e (2006).[8] Such frequent developments in trade law further distinguish the CIT and highlight the appropriateness of a deferential standard of review. The transformative developments in trade law since *Atlantic Sugar* was decided vitiate our adherence to a three-decade-old case.

There have also been major developments in Supreme Court jurisprudence in the area of administrative law, including the advent of *Chevron* deference and the articulation of *Mead* deference. *Chevron, U.S.A., Inc.* v. *Natural Res. Def. Council, Inc.,* 467 U.S. 837 (1984); *United States v. Mead Corp.,* 533 U.S. 218, 226–27 (2001). Indeed, *Chevron* was decided just three months to the day before *Atlantic Sugar*, and its impact on administrative law is immeasurable.

In the three decades since *Atlantic Sugar* was decided, the Supreme Court has reviewed four decisions of the

---

8    In fact, part of the framework that replaced that in *Atlantic Sugar* was attributable to the Uruguay Round of negotiations of the General Agreement on Tariffs and Trade. Uruguay Round Agreements Act, Pub. L. No. 103–465, 108 Stat. 4809 (1994).

CIT. Three of these cases dealt with *Chevron* deference.[9] In 1999, the Court examined whether customs classification regulations are entitled to *Chevron* deference. *Haggar Apparel*, 526 U.S. at 394 ("Like other courts, the [CIT] must, when appropriate, give regulations *Chevron* deference."). Similarly, in *United States v. Eurodif S.A.*, 555 U.S. 305 (2009), the Court analyzed the reasonableness of the Department of Commerce's interpretation of a statute. 555 U.S. at 316 ("[A] change in regulatory treatment . . . is not a basis for declining to analyze the agency's interpretation under the *Chevron* framework. [T]he whole point of *Chevron* is to leave the discretion provided by the ambiguities of a statute with the implementing agency.") (internal citation and quotation marks omitted). Finally, and most notably, the Court used a CIT customs classification case as a platform for reaffirming *Skidmore* deference. *Mead*, 533 U.S. at 221 ("We agree that a tariff classification has no claim to judicial deference under *Chevron,* there being no indication that Congress intended such a ruling to carry the force of law, but we hold that under *Skidmore v. Swift & Co.,* 323 U.S. 134 (1944), the ruling is eligible to claim respect according to its persuasiveness.").

While these cases do not specifically address the legal issues involved in ITC injury cases, they illustrate the significant shift in administrative law that has occurred since *Atlantic Sugar*; in particular, a shift in which greater deference is granted to administrative agencies at the trial court level. Subjecting an agency's work to duplicative substantial evidence review sails counter to the currents in administrative law.

---

[9] The fourth case, *United States v. U.S. Shoe Corp.*, 523 U.S. 360 (1998), is a case dealing with a customs tax found to be unconstitutional under the Export Clause, U.S. Const., Art. I, § 9, cl. 5.

For the foregoing reasons, I believe the court should have taken this opportunity to review the propriety of continued adherence to *Atlantic Sugar*. *Atlantic Sugar*'s *de novo* review is inefficient, obsolete, and thwarts the will of Congress. It is, in short, bad law under any reasoned application of *stare decisis*.